UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

GERMANIA MEREGILDO MENDOZA,          :

                    Plaintiff,          :          OPINION AND ORDER

          -against-          :
                                                    16 Civ. 7730 (GWG)
NANCY A. BERRYHILL,          :

                    Defendant.          :
----------------------------------------------------------------x

GABRIEL W. GORENSTEIN, United States Magistrate Judge

          Plaintiff Germania Meregildo Mendoza brings this action pursuant to 42 U.S.C. § 405(g)

for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for disability benefits under the Social Security Act.  Both

parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c).[1]  For the reasons stated below, Mendoza's motion is granted and the Commissioner's

motion is denied.

I.  BACKGROUND

          A.  Procedural History

          Mendoza applied for Disability Insurance Benefits on August 16, 2013, and

Supplemental Security Income on August 28, 2013.  See Certified Administrative Record, filed

_____

          [1]  See Motion for Judgment on the Pleadings, filed May 22, 2017 (Docket # 11);
Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed May
22, 2017 (Docket # 12) ("Pl. Mem."); Notice of Cross-Motion, filed Sept. 15, 2017 (Docket
# 22); Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the
Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed Sept. 15,
2017 (Docket # 23) ("Comm'r Mem.").

Mar. 21, 2017 (Docket # 9) ("R."), at 11, 31.[2]  The Social Security Administration ("SSA")

denied Mendoza's applications.[3]  Id. 124-53.  Through counsel, Mendoza requested review of

the SSA's decision by an Administrative Law Judge ("ALJ").  Id. 123.  A video-hearing was

held on September 17, 2015, at which Mendoza and her counsel appeared.  Id. 46-77.  In a

written decision dated September 25, 2015, the ALJ found that Mendoza was not disabled.  Id.

25-45.  Through her counsel, Mendoza requested review of the ALJ's decision by the Appeals

Council.  Id. 22-24.  In a written decision dated August 2, 2016, the Appeals Council modified

the ALJ's decision as discussed in section I.E below, but otherwise adopted the ALJ's findings

and ruled that Mendoza was not disabled.  Id. 1-13.

Mendoza filed this action on October 3, 2016, seeking review of that final decision.

See Civil Complaint, filed Oct. 3, 2016 (Docket # 1).

B. The Hearing Before the ALJ

Mendoza was represented by attorney Colin Sherman at the hearing before the ALJ.  R.

46, 49.  Counsel agreed with the ALJ that there was a complete medical record at the time of the

---

[2]  The Commissioner also submitted a supplemental filing containing a document that
was inadvertently omitted from the record.  See Supplemental Certification, filed Sept. 8, 2017
("Docket # 20").  Because the pagination in this supplemental record continues immediately
after the last page of the originally submitted record, see id., all citations to the document
contained in this portion of the record will also be in the (R.) format.

[3]  Although Mendoza's applications were filed in 2013, Mendoza moved at her hearing
before the ALJ to reopen an earlier application filed November 19, 2009.  R. 50.  The
Commissioner never ruled on this request.  The Commissioner concedes, see Comm'r Mem. at
17 n.10, that Mendoza's earlier claim was "constructively re-opened" because its decision
"contains a review of the entire record beginning with plaintiff's alleged onset of disability in
2008."  See Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003) ("If the Commissioner reviews
the entire record and renders a decision on the merits, the earlier decision will be deemed to have
been reopened, and any claim of administrative res judicata to have been waived") (citations and
internal quotation marks omitted).

hearing.  Id. 50.

Counsel stated that Mendoza became disabled as of August 19, 2008, "due to a combination of psychiatric and physical problems," including "major depressive disorder with psychotic features," which has also been diagnosed as "bipolar disorder and schizophrenia."  Id. 51.  Regarding these psychiatric symptoms, Mendoza testified that in August 2008, while living in North Carolina, she was admitted to a psychiatric hospital for three days after an incident in a church.  Id. 57-58.  This incident occurred after she began seeing "demons" and hearing voices speaking to her.  Id. 57.  Mendoza went to the church to get help from a priest because her "belly was full of water," at which time she became ill, forgot her name, and "broke everything that was there."  Id. 57-58.

Mendoza testified that she received monthly outpatient treatment after being discharged from the psychiatric hospital, but continued to experience hallucinations "once in a while."  Id. 58.  Mendoza stopped receiving treatment in 2010 after moving to New York.  Id. 58-59.  Mendoza began receiving Medicaid in 2011, but did not receive any more treatment until 2013 after she began feeling fatigued.  Id. 59-60.  Mendoza reported seeing "witches" appear in front of her after restarting treatment.  Id. 60.  Mendoza last experienced a hallucination in or about February 2014.  Id.  Mendoza was taking medication for this condition, her doctor had increased her dosage, and this medication helped her.  Id. 60.  Mendoza's self-esteem has fluctuated since restarting treatment.  Id.  When asked how she got along with people, she stated she was "a little isolated."  Id. 60-61.  Finally, Mendoza noted that her concentration was "a little low" and that she needs reminder phone calls to remember that she has doctor's appointments, forgets things that she has read after she finishes reading them, and sometimes forgets to take her medication.  Id. 65-66.

Counsel also stated that Mendoza's application for benefits was based in part on her back problems.[4]  Id. 51.  Mendoza testified that she was not experiencing much back pain and rated her pain a two out of ten at that time.  Id. 61-62.  However, Mendoza noted that in April of that year, her back pain amounted to a ten out of ten.  Id. 62.  Mendoza started using a cane in April to help her walk due to her back pain, but this cane was not prescribed and she did not use it on the day of the hearing.  Id. 61.  Mendoza's back pain subsided since then because she received an injection.  Id. 62.  As a result of this pain, Mendoza could not walk for more than one or two blocks, could not walk around the house for more than two or three hours at a time, and could not sit for more than half an hour.  Id. 62-63.  Mendoza also noted that she tries not to lift things due to her back pain, and that she felt pain in her back a few days prior to the hearing after carrying a gallon of water.  Id. 63-64.

Concerning daily activities, Mendoza testified that she occasionally cooked, but this was sometimes difficult due to her difficulty remembering things.  Id. 64-65.  Mendoza did no cleaning around the house and her daughter cleaned, did laundry, and got groceries for her.  Id. 64-65.  On an average day, Mendoza would wake up early and stay in bed while she read the bible and prayed.  Id. 66.  Around 10:00 a.m. each day, she would walk or sometimes take the bus to her brother's house, which was about two blocks from where she lived.  Id. 66.  After returning from her brother's, she would eat, read, and listen to Christian music.  Id. 67.  Mendoza did not visit any other friends or family members.  Id. 66.  Mendoza walked to church — about a block and a half away — to attend mass or bible study three or four times a week.  Id.

---

[4]  Mendoza does not challenge the ALJ's findings regarding her physical impairments. See Pl. Mem. at 2 n.5.  We summarize Mendoza's testimony regarding her back pain because it is relevant to the ALJ's credibility determination.

67. The bible study would last from 11:00 to 3:30, and when she felt pain or experienced trouble concentrating she would "walk and [] pray mentally." Id. 67.

Concerning prior work history, Mendoza did maintenance and housekeeping work in a psychiatric hospital for seven months in 2008, which involved sweeping, mopping, cleaning bathrooms, and organizing. Id. 53-55. This job lasted for eight hours each day, during nearly all of which Mendoza would be on her feet. Id. 54. Mendoza would lift more than 10, but not more than 20 pounds, as part of this job. Id. 54. Prior to this job, she performed the same type of work at a university for nine months. Id. 55. Mendoza used to babysit for one to two children for less than eight hours per day, but she did not remember when exactly she did this. Id. 55-56. Finally, Mendoza worked at a McDonald's for approximately three weeks after moving to New York in 2010, but she could not keep up with the pace of this job. Id. 68.

The ALJ called a vocational expert witness ("VE"). Id. 69. The VE was informed that Mendoza previously did "janitorial maintenance work" in a hospital and university, that her duties consisted of "mopping and cleaning bathrooms," and that as part of this job, Mendoza lifted "more than 10 pounds but not more than 20." Id. 72. The VE classified this work as "cleaner housekeeping" requiring a "light" exertional level. Id. 73.

The ALJ asked the VE to consider a hypothetical individual of Mendoza's age, education and work experience, with the additional qualification that this person could perform work of a "medium exertional level . . . limited to simple, unskilled work." Id. 73. The ALJ further stipulated that this person "[w]ould need a low contact position, meaning only occasional interaction with coworkers, supervisors and the public," and that this person "would need a low stress position meaning only occasional decision-making required; only occasional judgment required; and no fast-paced work environment." Id. 73-74. Finally, the ALJ noted that this

person would be off-task "five percent of the work day due to symptoms from their impairment." Id. 74.  The VE testified that such a person could perform Mendoza's past jobs.  Id. 74.  The VE testified, however, that if this person was off-task 10 percent of the day, or needed to miss more than one day a month due to this impairment, then this person would not be able to perform Mendoza's prior jobs.  Id. 74.  The VE also noted that if this person missed more than one day of work per month, this person would not be able to work at all.  Id. 74.

    C.  Medical Evidence

    Both Mendoza and the Commissioner have provided summaries of the medical evidence contained in the administrative record.  See Pl. Mem. at 2-10; Comm'r Mem. at 4-15.  The Court had directed the parties to specify any objections they had to the opposing party's summary of the record.  See Scheduling Order, filed Mar. 22, 2017 (Docket # 10), at ¶ 5.  Pursuant to this Order, the Commissioner disputes Mendoza's characterization of a letter written by Rafael Lopez Sanchez, M.D., on December 7, 2015,  see Comm'r Mem. at 13 n.9, which Mendoza summarizes as providing that she "was unable to work due to depression," Pl. Mem. at 8. Having reviewed the letter, we agree with Commissioner that Mendoza's description of this letter is inaccurate.  This letter simply states that Mendoza's "absence" was due to depression, but does not state that she could not work.  R. 892.

    Other than this dispute, the summaries are substantially consistent with each other. Accordingly, except as already discussed, the Court adopts Mendoza's and the Commissioner's summaries of the medical evidence as accurate and complete for purposes of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in section III below.

D.  The ALJ's Decision

The ALJ denied Mendoza's application for benefits on September 25, 2015.  R. 25-45.
The ALJ found that Mendoza met the insured status requirements of the Social Security Act
through December 31, 2014, and had not engaged in substantial gainful activity since her alleged
onset date of August 19, 2008.  Id. 33.  The ALJ noted that Mendoza suffered from major
depressive disorder, schizophrenia, and lumbar degenerative disc disease, which "have lasted at
a 'severe' level for a continuous period of more than 12 months."  Id.  Accordingly, the ALJ
noted that these conditions "constitute[d] severe impairments within the meaning of the Social
Security Act and Regulations."  Id.

The ALJ found that Mendoza's impairments did not meet or medically equal an
impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  Id. 33-34.  The ALJ specifically
considered Listing Sections 1.04 (disorders of the spine), 12.03 (psychotic disorders) and 12.04
(affective disorders).  Id. 34.

With respect to Listing 1.04, the ALJ found no evidence that Mendoza's degenerative
disc disease caused a listing level "(1) compromise of a nerve root or the spinal cord with
evidence of nerve root compression, (2) spinal arachnoiditis, or (3) lumbar spinal stenosis
resulting in an inability to ambulate effectively."  Id.

The ALJ found that Mendoza's mental impairments, whether considered singly or in
combination, did not meet or medically equal the criteria listed in 12.03 and 12.04.  Id.  The ALJ
found that although Mendoza's mental impairments satisfied some of the paragraph A criteria
due to her "depressed mood[,] generalized anxiety, feelings of guilt or worthlessness, anhedonia,
difficulty thinking or concentrating, easy distractibility, audiovisual hallucinations and
delusions," Mendoza had no "marked limitations" as required by paragraph B, but had only a

7

mild restriction in activities of daily living, moderate difficulties in social functioning, moderate

difficulties in concentration, persistence or pace, and "no medically identifiable episodes of

decompensation for an extended duration." Id. 34-35. Finally, the ALJ noted that the paragraph

C criteria of these listings were not satisfied because "there is no evidence that the claimant

experiences repeated episodes of decompensation, a residual disease process barring an increase

in mental demands or an inability to function outside a highly supportive living environment."

Id. 35.[5]

Turning to Mendoza's residual functional capacity ("RFC"), the ALJ found that Mendoza

could

> perform medium work limited to simple, unskilled work; limited to low contact work
> meaning only occasional interaction with co-workers, supervisors and the public; limited
> to low stress work meaning only occasional decision making required and only
> occasional judgment required on the job; she can not work in any fast-paced work
> environments; and she will perform off task 5% of workday.

Id.

With respect to Mendoza's psychological symptoms, the ALJ noted that although

Mendoza "was psychiatrically hospitalized in August 2008, she responded well to treatment and

medication such that even a month later she was described as psychologically stable." Id. 36.

---

[5] The criteria identified as "paragraph A," paragraph B," and "paragraph C," are
described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.03, 12.04. A claimant will be found to
have the listed impairment "when the requirements in both [paragraphs] A and B are satisfied, or
when the requirements in C are satisfied." Id. To meet or medically equal the impairments of
listing 12.03 or 12.04, a claimant's impairments must satisfy at least two of the following
"paragraph B" criteria: marked restriction of activities of daily living; marked difficulties in
maintaining social functioning; marked difficulties in maintaining concentration, persistence, or
pace; or repeated episodes of decompensation, each of extended duration. See id. §§ 12.03(B),
12.04(B). If an impairment fails to satisfy the paragraph B criteria, plaintiff may still meet the
requirements of listings 12.03, 12.04, if she can meet the criteria listed in the more serious
paragraph C of each section. See id. §§ 12.03, 12.04. Mendoza does not argue that the record
reflects that she meets the paragraph C criteria.

Many of the ALJ's findings focused on the positive effect of medication on Mendoza's psychological symptoms, as well as the exacerbating effect that medication non-compliance had on these symptoms. These findings were as follows.

The ALJ noted that Dr. James Smith's notes from September 25, 2008, to April 23, 2009, documenting Mendoza's treatment after her initial hospitalization, showed that Mendoza was responding well to psychotropic medication, and that she generally had "normal psychomotor activity," "no signs of psychosis," "normal speech," "improved depression," although she occasionally exhibited symptoms of paranoia or "residual anxiety." Id. 36-37.

The ALJ noted that after a gap in treatment records from 2010 through 2012, a FEGS Biophysical examination in 2013 stated that plaintiff was experiencing "a sad mood and multiple forms of auditory and visual hallucinations but her statements also indicated that she was not undergoing any form of treatment nor was she taking psychotropic medication." Id. 37.

The ALJ also noted that Nurse Practitioner ("N.P.") James Dusenbury, who treated Mendoza for mental illness, stated in notes from October 23, 2013, that although Mendoza was experiencing depressive symptoms, her sleep had improved and medication controlled her schizophrenic symptoms. Id. On March 1, 2014, N.P. Dusenbury again reported that Mendoza was medication compliant, and that she had fair sleep, "OK" memory and concentration, an anxious mood, and although she reported hallucinating a witch, Mendoza had fair insight insofar as she realized the witch was a hallucination. Id. On November 19, 2014, N.P. Dusenbury noted that Mendoza's symptoms were controlled by medication, and on March 23, 2015, noted that Mendoza's sleep, appetite, and concentration were good, but that Mendoza was depressed. Id.

The ALJ noted that Dr. Cynthia Prabahar opined on August 28, 2014 that Mendoza's schizophrenia was stable while she was on medication. Id. 37. Dr. David Mahony, a

psychological consultative examiner, however, stated on October 10, 2013 that the medication Mendoza brought to the examination was two months old, which indicated that she had not been taking it as prescribed.  Id.  Even so, Dr. Mahony found that "there was no evidence of limitation in performing simple tasks; and [Mendoza] has moderate difficulties in maintaining attention and concentration, making appropriate decisions, relating to others and dealing with stress."  Id. Dr. Mahony also noted that Mendoza "had fluent speech, . . . normal thought processes, a depressed affect, a dysthymic mood, impaired concentration, poor insight and good judgment." Id.  The ALJ gave this report "great weight" insofar as it assessed only moderate psychological limitations "with no limitation in performing simple tasks . . . because it is supported by years' worth of treatment records showing that the claimant's psychological[] symptoms can improve and be controlled with medication and steady treatment."  Id. 39.[6]

As to Mendoza's credibility, the ALJ noted that Mendoza's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible."  Id. 38.  The ALJ found that Mendoza's testimony was "fairly credible but it does not support a finding of any disabling impairments."  Id.  In particular, the ALJ pointed to Mendoza's testimony that "she was always physically moving around and that she could perform

---

[6]  The ALJ also stated that an opinion from Dr. Eli Leiter on October 17, 2013 that Mendoza could not work due to her dysthymic disorder was at odds with that report's statement that Mendoza was psychologically improving, and also pointed out that Dr. Leiter never examined nor treated Mendoza.  Id. 39.  Similarly, the ALJ gave "little weight" to a FEGS report from July 2013 stating that Mendoza was unable to work because the opinion was based primarily on Mendoza's educational history and age, it was not rendered by an acceptable medical source, the source did not examine Mendoza, and the "assessment of an unstable bipolar disorder on which the opinion was based stemmed from a one-time examination and the claimant's self-reporting."  Id.

her own activities of daily living," and that she used public transport and regularly visited her brother. Id. With respect to Mendoza's psychological symptoms in particular, the ALJ noted that "even during [Mendoza's] initial August 2008 psychiatric hospitalization the claimant was described as responding well to treatment and medication such that even a month later she was noted as mentally stable." Id. 39. Moreover, the ALJ noted that when Mendoza was medication compliant, her schizophrenic symptoms were described as "stable," she had "adequate memory and concentration, and her sleep was fair," and that her "sleep, appetite and concentration were normal." Id. The ALJ also noted that although Dr. Mahony's October 2013 report found that Mendoza had "mild to moderate mental limitations," this examiner found that Mendoza may not have been taking her medications as they had been prescribed. Id.

Based on the above, the ALJ found Mendoza was able to perform her past relevant work as a Housekeeping Cleaner after comparing Mendoza's "residual functional capacity for a range of medium work with the physical demands of her housecleaner work." Id. 40.[7]

E. The Appeals Council's Decision

Through her counsel, Mendoza appealed the ALJ's decision to the Appeals Council. Id. 22-24. The Appeals Council granted this request for review and notified Mendoza that it would also consider "new and material evidence that the claimant or the representative submitted within 30 days from the date of the notice." Id. 7.

In support of her appeal, Mendoza submitted new evidence. This evidence included a

---

[7] Although the ALJ noted that "[t]he vocational expert testified that a hypothetical individual with the above residual functional capacity could not return to past relevant work as a Housekeeping Cleaner," id. 40, the VE in fact testified that a hypothetical individual with such residual functional capacity would be able to return to that job, id. 73-74. The Appeals Council found that the ALJ's description of the VE's testimony was a typographical error. Id. 10.

letter stating that a psychiatric evaluation performed by James K. Ellis, M.D. on June 28, 2016, "indicated that the claimant [sic] symptoms have persisted despite treatment via antipsychotic and SSRI medications and that the claimant's psychiatric conditions would render her prone to episodes of decompensation in work-like settings." Id. 8. However, the Appeals Council found that this opinion did not warrant changing the ALJ's findings and conclusions because it post-dated the ALJ's opinion by nine months, and also indicated that Mendoza's psychiatrist discontinued Mendoza's antipsychotic medication at the end of 2015 despite earlier treatment records indicating that her symptoms improved with medication. Id.[8]

The Appeals Council also reviewed and corrected some of the ALJ's findings. The Appeals Council found that Mendoza was last insured through March 31, 2014, instead of December 31, 2014, as found by the ALJ. Id. 9. The Appeals Council also noted that the ALJ did not address, evaluate, or weigh a July 10, 2015, opinion from N.P. Dusenbury, which "assessed numerous moderate-marked limitations in [Mendoza's] mental functioning." Id. 9. However, the Appeals Council gave this opinion little weight because it was "not supported by the longitudinal record." Id. 10.

The Appeals Council also found that the ALJ did not address an October 22, 2013, "State agency" opinion stating that Mendoza could "understand and follow simple instructions and make simple work decisions," but "that the severity of her impairment may pose moderate restrictions on her ability to respond appropriately to supervisors and co-workers and adapt to changes in a work setting; and that she is capable of simple, entry level rote work in a low

---

[8] Mendoza also submitted an additional report from May 21, 2013, from Lincoln Medical and Mental Health Center, but the Appeals Council dismissed this report as duplicative of evidence that was already considered by the ALJ. R. 8.

contact setting." Id. 10. The Appeals Council noted that this opinion was consistent with the

ALJ's assessment of Mendoza's RFC, and gave it great weight. Id. 10.

Finally, the Appeals Council adopted the remainder of the ALJ's findings and found that

Mendoza was not disabled. Id. 10-11.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d

370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison

Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue,

537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006);

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per

curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds

substantial evidence to support the Commissioner's final decision, that decision must be upheld,

even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

B. Standard Governing Evaluation of Disability Claims by the Agency

For purposes of Supplemental Security Income, the Social Security Act considers a person "disabled" if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An identical definition defines the term "disability for the purpose of Disability Insurance Benefits. 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). When

14

applying this standard, a person will be found to be disabled only if it is determined that his "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing Burgess, 537 F.3d at 120) (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and "meets or equals" one of the listings in 20 C.F.R. part 404, subpart P, appendix 1, and "meets the duration requirement," the claimant must be found

disabled.  Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Fourth, if the claimant's impairment does not meet or equal one of the listed impairments, or does not meet the duration requirement, the Commissioner must review the claimant's RFC to determine if the claimant is able to do the work he or she has done in the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id.  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permit the claimant to do other work.  Id. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id.  The claimant bears the burden of proof on all of these steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

## III.  DISCUSSION

We have considered Mendoza's arguments and find that the case must be remanded for the following reasons.

First, the Appeals Council did not properly evaluate the opinion of the "State agency" rendered on October 22, 2013.  R. 10 (citing id. 133-35, 147-49).  This opinion found Mendoza was "[n]ot significantly limited" in her "ability to remember locations and work-like procedures," as well as her "ability to understand and remember very short simple instructions." Id. 133, 147.  It also found moderate limitations in her ability to "respond appropriately to supervisors and co-workers and to adapt to changes in a work setting."  Id. 135, 149.  This opinion concluded that Mendoza was "capable of simple, entry level rote work in a low contact

setting." Id. 135, 149.

Although this opinion was not considered by the ALJ, the Appeals Council afforded it "great weight." Id. 10. But the Appeals Council's only stated reason for assigning the State agency's opinion great weight was that it was consistent with the ALJ's RFC determination. Id. 10. When reasoning of this kind is used by an ALJ, case law has noted that it is not proper. As was stated in Simmons v. Colvin, 2016 WL 1255725 (E.D.N.Y. Mar. 28, 2016),"[b]ecause an ALJ should use medical opinions to determine the RFC, the ALJ cannot give medical opinions weight based on their consistency with the RFC, as such reasoning is circular and flawed." Id. at *15 (internal quotation marks omitted) (quoting Faherty v. Astrue, 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013)); accord Wahler v. Colvin, 2014 WL 6390320, at *11 (W.D.N.Y. Nov. 17, 2014); see also Abar v. Colvin, 2016 WL 1298135, at *5 (N.D.N.Y. Mar. 31, 2016) ("If the ALJ had indeed afforded [a doctor's] opinion significant weight merely because it was consistent with the ALJ's RFC determination, then his reasons would have been circular"). Thus, the Appeals Council did not provide an adequate basis for giving "great weight" to the State agency opinion.

Second, the Appeals Council failed to properly consider the opinion of Dr. James K. Ellis.[9] After the Appeals Council granted review of Mendoza's claim, Mendoza submitted a June 28, 2016, report from Dr. Ellis. R. 8, 893-902. Dr. Ellis reviewed the history of Mendoza's mental illness and treatment. Id. 894-896. Dr. Ellis noted that Mendoza reported that she

---

[9] Mendoza argues that the Appeals Council "refused to admit [Dr. Ellis's opinion] as an exhibit based on its conclusion that the evidence did not relate to the period at issue." Pl. Mem. at 9 n.23. However, the Commissioner later explained that the report was "inadvertently omitted from the administrative record" in this case. See Supplemental Certification, filed Sept. 8, 2017 (Docket # 20).

previously had trouble communicating with her doctors, in part because she had "difficulty advocating for herself with doctors because she was raised to view them hierarchically and to always be deferential to them." Id. 895. Dr. Ellis also stated that Mendoza reported having a hallucination two weeks prior to her examination. Id. Dr. Ellis also stated that although Mendoza had previously been treated with antipsychotic medication, that medication was "discontinued by her psychiatrist . . . at the end of last year." R. 894-95. Dr. Ellis recorded diagnostic impressions of "schizoaffective [d]isorder, depressive type," "[p]anic [d]isorder," and "[a]goraphobia." Id. 897.

Dr. Ellis also completed a mental impairment questionnaire. Id. 898-902. It stated that Mendoza had experienced "episodes of decompensation or deterioration in a work or work-like setting." Id. 900. While Dr. Ellis found that Mendoza had some mild limitations, he found that she had "marked" limitations in a number of areas, including in her ability to maintain concentration, perform activities on a schedule, be punctual, work in coordination with others, complete a workday without interruptions from psychological symptoms, perform at a consistent pace, interact appropriately with the public, get along with coworkers, and maintain socially appropriate behavior. Id. 901. Dr. Ellis specifically stated that his findings related "as far back as" August 21, 2008. Id. 902.

Under the governing regulations, "[n]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." Perez, 77 F.3d at 45. However, "if new and material evidence is submitted [to the Appeals Council], the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b).[10] "If the Appeals Council fails to fulfill its obligations under § 404.970(b) [and § 416.1470(b)], the proper course for the reviewing court is to remand for reconsideration in light of the new evidence." Wilson v. Colvin, 2016 WL 5402702, at *5 (W.D.N.Y. Sept. 28, 2016) (citations and internal quotation marks omitted); accord Patterson, 24 F. Supp. 3d at 372.

Here, the Appeals Council appears to have concluded that Dr. Ellis's report should not carry any weight because it "post-date[d]" the ALJ's decision "by nine months." R. 8. This statement, however, fails to address the fact that Dr. Ellis specifically states that his opinion related "as far back as" August 21, 2008. Id. 902. Given Dr. Ellis's statement, the Appeals Council should have concluded that it was required to consider Dr. Ellis's report because it met the regulatory requirements. It was new. It also related to the time period prior to the ALJ's decision. As for the materiality requirement, "[e]vidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied, and there is a reasonable possibility that the new evidence would have influenced the ALJ to decide the claimant's application differently." Suttles v. Colvin, 654 F. App'x 44, 47 (2d Cir. 2016) (citing Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991)). We have already noted Dr. Ellis's report's relevance to the appropriate time period. Moreover, because Dr. Ellis's report found more severe restrictions than other medical opinions considered by the ALJ, a "realistic possibility"

---

[10] Some courts, including this one, have referred to an additional requirement that a claimant show "good cause" for failure to introduce the evidence earlier. See, e.g., Patterson v. Colvin, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014). The "good cause" requirement cited, however, applies to evidence submitted to a district court, not to evidence submitted before the Appeals Council. See Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S., 940 F.2d 40, 43 (2d Cir. 1991). Thus, the issue of whether Mendoza had "good cause" for failing to submit the evidence earlier is not at issue.

existed that the ALJ might have reached a different outcome had the ALJ considered Dr. Ellis's report. For example, the ALJ found Mendoza had at most moderate limitations in "paragraph B" criteria of listings 12.03 and 12.04, such as "social functioning" and "concentration, persistence or pace." R. 34. Dr. Ellis's mental impairment questionnaire, by contrast, found marked difficulties in Mendoza's abilities to, inter alia, "maintain attention and concentration for extended periods," "[p]erform activities within a schedule and consistently be punctual," "[c]omplete a workday without interruptions from psychological symptoms," "[p]erform at a consistent pace without rest periods of unreasonable length or frequency," and "[m]aintain socially appropriate behavior." Id. 901. Similarly, although the ALJ found "no medically identifiable episodes of decompensation for an extended period" in evaluating the "paragraph B" criteria, id. 35, Dr. Ellis noted that Mendoza experienced "episodes of decompensation or deterioration in a work or work-like setting," id. 900. These inconsistencies could have affected the ALJ's assessment of Mendoza's RFC inasmuch as the ALJ noted that the RFC determination reflected "the degree of limitation" the ALJ found in the "paragraph B" mental function analysis.[11] Id. 35.

The Commissioner contends that the Appeals Council did in fact consider Dr. Ellis's opinion. See Comm'r Mem. at 22. It is true that the Appeals Council stated at one point that it "considered" Dr. Ellis's report. R. 8. However, in the very next sentence, the Appeals Council explains that the report would not affect its decision because the report was "about a later time" than the ALJ's decision. Id. Thus, it appears that the Appeals Council was "considering" the

_____

[11] We do not accept the Commissioner's argument that the mere fact that Mendoza's "psychiatrist discontinued her antipsychotic medication at the end of 2015," R. 8, necessarily means that there is no realistic possibility that the ALJ's opinion might be influenced by Dr. Ellis's report. See Comm'r Mem. at 23.

report only to determine whether it met the threshold inquiry of whether the report should be considered new evidence. Additionally, we do not believe that the Appeals Council considered the evidence on the merits because it did not give any indication of what weight it gave Dr. Ellis's report, as is usual when the Commissioner considers medical opinions. Accordingly, we find the Commissioner did not consider Dr. Ellis's report and that the case must be remanded for consideration as to what weight it should be given.[12]

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Docket # 22) is denied and Mendoza's motion for judgment on the pleadings (Docket # 11) is granted. The case is remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order. The Clerk of Court is requested to enter judgment.

SO ORDERED.

Dated: December 7, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[12] Because we have found that the above grounds require remand, it is not necessary to determine whether remand is also appropriate based on the ALJ's assessment of Mendoza's credibility. Similarly it is not necessary to address Mendoza's arguments regarding the weight given to specific medical sources not addressed herein. The assessment of such evidence and of Mendoza's credibility will necessarily be reconsidered in the context of a record that includes the Commissioner's evaluation of Dr. Ellis's opinion and the State agency opinion.

21